# John L. Mason *et al.*

## *v.*

# Jacob M. Bair.

1. Practice in Chancery — *of a rule to answer pending a demurrer to the bill.* Where a demurrer to a bill in chancery presented several grounds of objection, the court entered an order sustaining some of the grounds of demurrer, and ruled the defendant to answer, without, in terms, overruling the demurrer upon the remaining objections, or in any way disposing of them. *Held,* that the rule to answer was, by implication, an overruling of the demurrer upon the grounds which had not been sustained, and was a sufficient disposition of the demurrer.

2. Notice — *oral evidence in chancery.* No notice is required to be given of the introduction of oral testimony in chancery cases.

3. Evidence in Chancery *must be preserved in the record.* Although oral testimony may be introduced in chancery cases, it must still be preserved in the record.

4. Of the time and mode of preserving such evidence. And this may be done by its being reduced to writing by the master, or by any one else, under the direction of the court, or it may be embodied in the decree.

5. But it is not essential that the testimony shall be reduced to writing and preserved in the record, when it is first taken.

6. It is only necessary that it appear in the record, and the court below must be left in the exercise of its discretion as to the time when, and the mode in which, it is placed in the record, so it shall be done by the time the decree is rendered and filed.

7. And if, from accident, the evidence thus taken should be lost or forgotten

Mason et al. *v.* Bair.

before the decree is rendered and filed, it would be the duty of the court, on application of the party, or, if a decision has not been made, on his own motion, to have the evidence retaken, that it may be understood by the court and preserved in the record.

8. AMENDMENT OF BILL IN CHANCERY — *how far discretionary.* It was objected that an amendment of a bill in chancery was allowed after replication filed, and the cause submitted on the evidence; but there was no error. Such amendments are within the discretion of the court trying the cause, and unless it appears that injustice has thereby been done, or great hardship occasioned to the defendant, its exercise will not be controlled. Neither occurred in this case because the leave was given to amend and the cause continued, so the defendant had ample time to meet the amendment by proof.

9. INTERLINEATIONS IN PLEADINGS — PRESUMPTION. It is not error for the court below to refuse to strike out interlineations appearing in a bill in chancery. There could be no presumption that the interlineations were made after the bill was filed. On the contrary, it must be presumed the court below had evidence that they were a part of the original bill, or, at least, that there was no evidence they constituted improper amendments.

10. ALLOWANCE OF CLAIMS AGAINST ESTATES — *right of the heirs to resist it.* The 95th section of the statute of wills contemplates that the heirs are parties, or may become parties, to the proceedings in the county court on the presentation and allowance of claims against an estate. Under this section, the heirs have a right to be present and contest the justice of the claim.

11. SAME — *its conclusiveness as to the heirs and personal representatives.* The heirs having this right to appear and resist the allowance of the claim, the adjudication of the court in making the allowance must be held, *prima facie,* binding upon them, though they neglect to avail themselves of such right.

12. But the allowance is conclusive upon the executor and administrator, and has the force and effect of a judgment until it is reversed.

13. EVIDENCE OF SUCH ALLOWANCE — *certificate of county clerk.* A certificate of the clerk of the County Court, under the seal of the court, setting forth that certain allowances have been made against an estate, as appears of record in his office, is admissible in evidence, in proof of such allowances, in a suit involving that question.

14. CONSTRUCTION OF A CONTRACT — *effect of agreement to pay for property in the discharge of vendor's debts.* Where a party purchases property at a given price, to be discharged by satisfying and discharging that amount of the vendor's indebtedness, the purchaser has the right, after the death of his vendor, in the execution of the contract, to pay claims against the estate, or to discharge any balance remaining of the purchase-money out of claims against the estate, as that would be indebtedness, whether to himself or other persons.

15. STATUTE OF FRAUDS — PAROL SALE OF LAND — *what will take a case out of the statute.* Where a purchaser of land by parol, pays the purchase-money, enters into possession and holds under his purchase, and makes lasting and valuable

improvements on the premises, it is held, these facts will take a case out of the statute of frauds.

16. VENDOR AND PURCHASER — *when the latter entitled to a conveyance — and in what mode it may be acquired.* The purchaser having done those things, is entitled to a conveyance, which he may obtain by a resort to chancery for a specific performance, or, in the event of the vendor having died, and the land is sold at an administrator's sale, he may purchase the land at such sale, and thus acquire the title without resorting to a bill for specific performance.

17. ESTOPPEL. Nor will the party thus entitled to a conveyance be estopped to assert his right in equity for a specific performance, by reason of an ineffectual effort to acquire the title at an administrator's sale, occasioned by a misdescription of the land in that proceeding.

18. ESTOPPEL — *mistake in the description of land in a bill in chancery.* Nor will the fact that a mistake was made in the description of the land in a bill for specific performance, operate to estop the complainant from amending the bill so as to claim a conveyance of the premises really purchased.

APPEAL from the Circuit Court of Randolph county; the Hon. H. K. S. O'MELVENEY, Judge, presiding.

This was a suit in chancery instituted in the court below, in 1861, by Jacob M. Bair against John S. Mason, Charles B. Mason, George M. Close, Richard C. Petitt and Mary W. Petitt, his wife, as heirs-at-law of George H. Mason, deceased, to enforce the specific performance of a contract entered into by the said George H. Mason, in his lifetime, for the conveyance of a certain tract of land to the complainant.

It appears from the allegations in the bill, that prior to the year 1844, George H. Mason conveyed certain lands in Randolph county, in trust to secure the payment of a debt of $150, which he was then owing to Joseph B. Holmes and Francis Swanwick. It is stated that afterwards, on the 22d day of September, 1844, the lands being about to be sold, under the deed of trust, to satisfy the debt thereby secured, Mason bargained and sold the premises to the complainant, Bair, for the sum of four hundred dollars, it being one of the stipulations of that contract of sale that Bair should pay off the debt due from Mason to Holmes and Swanwick, which then amounted to the sum of $230, and that he should pay the residue of the $400 agreed to be paid for the land to Mason himself; that Mason

promised that within a few days he and his wife would execute and deliver to Bair a deed for the land, containing covenants of warranty; but that Mason died soon after without having made any conveyance.

Bair states that in pursuance of his agreement, he paid the sum of $230 to Holmes and Swanwick, on the 22d of September, 1844, and on the same day paid the residue of the purchase price of the land, $170, to Mason himself. That on the day of his purchase, he entered into possession of the premises with the knowledge and assent of Mason, and had occupied the same ever since, and has put lasting and valuable improvements thereon.

That one Major Mason, who has since died, became administrator of the estate of George H. Mason, deceased, and after selling the personal property, found the estate insolvent, not able to pay exceeding twenty cents on the dollar of the claims allowed in the Probate Court. So at the April Term, 1846, of the Circuit Court of Randolph county, he procured an order to sell the real estate of his intestate.

George H. Mason left Mary W. Mason, his widow, who has since intermarried with Richard C. Petitt, and John S. Mason, and Charles B. Mason, his sons, and George M. Close, son of his daughter Martha, deceased, as his heirs-at-law.

The complainant states that he has made frequent application to the administrator and heirs for a conveyance of the premises, which they have refused to make; but on the contrary, the said administrator, not regarding the rights of Bair, on the 23d day of June, 1846, under the pretended order of the Circuit Court made at the April Term, 1846, before mentioned, sold the whole of said lands. Bair states that he became the purchaser of the lands at that sale for the sum of $400, subject to the dower right of the widow, and was induced to do so by the false representation of the administrator that he could acquire a good title to the premises in no other way.

Bair alleges that he paid to the administrator the full amount of his bid, and obtained from him a deed, which, however, was

so defective that only a part of the premises passed by that conveyance.

That he has purchased and obtained a release of the dower right of the widow in the premises, for which he paid her $360 in money, and in addition thereto has within two years advanced and paid to her, money, provisions, clothing, &c., amounting to $300.

It is further shown in the bill that at the April Term, 1860, of the Circuit Court, the heirs-at-law of George H. Mason, deceased, commenced an action of ejectment against Bair for the recovery of that portion of the lands which did not pass under the defective administrator's deed; which action is still pending.

The complainant prays that the defendants be required to convey to him all the right and title to the premises which they hold as heirs-at-law of George H. Mason, deceased; and that they be enjoined from further proceedings in the action of ejectment; and for general relief.

An injunction was granted by the master in chancery according to the prayer in the bill, and the writ duly issued and served.

At the April Term, 1861, a demurrer was interposed to the bill, assigning several special grounds of demurrer. The court sustained some of the objections thus taken to the bill, ruling that Richard C. Petitt and Mary C. Petitt were not necessary parties, and dismissed the bill as to them, and then ruled the defendants to answer by a given time, the remaining objections taken on the demurrer to the bill not being specially noticed in the record.

In October, 1861, the defendants answered, denying the principal grounds upon which relief is sought by the bill, and at the April Term, 1862, the complainant filed his replication, and the testimony was heard in the cause, orally, in open court, and the case was continued for argument and determination.

The record of the proceedings had at the April Term, 1863, recites "that the evidence in this cause having been heard at the April Term, 1862, the cause was to have been argued by counsel at the Monroe Circuit Court then following. That

the counsel for the defense did not appear, and the cause was passed over. At the September Term, 1862, the cause was again laid over upon request of T. G. Allen, attorney for defendants, until this term of the court. That complainant demands a hearing and decision of the cause, and the court, not being able to remember the testimony taken in the cause, orders the testimony to be taken again, which is done in open court, and noted down by the master in chancery, to be preserved in the records of the cause." The record further recites: "Cause heard this fourth day of the term, being Thursday, April 23d, 1863. J. H. Watt, attorney for the defendants, objects to the rehearing of the testimony on this day for the want of notice, &c. The court thereupon notifies said attorney that he can have reasonable time to get up his defense, and even to continue the cause for that purpose, if necessary. Whereupon part of the testimony is heard by the court, whereupon the complainant enters his motion to amend the bill herein, which motion is by the court allowed, and leave is hereby given the complainant to amend the bill, generally, and the cause is continued with leave to both parties to take additional testimony, &c."

The testimony heard in open court at the April Term, 1863, was taken down and certified by the master in the following form:

"JACOB M. BAIR .
      *v.*       } Bill for specific performance, general relief, &c., &c.
JOHN S. MASON *et al.*

"Deposition of witnesses on the part of the complainant in the above entitled cause in chancery, who were sworn in open court and examined by complainant on the 23d day of April, 1863.

"JOHN MICHAU,
*"Master in Chancery of said county."*

Then following the testimony of the several witnesses examined, signed by them respectively, to the end of which was appended this certificate:

" STATE OF ILLINOIS, ⎰
RANDOLPH COUNTY. ⎱

" I, John Michau, master in chancery for said county, do hereby certify that the foregoing witnesses were duly sworn in open court, at the April Term of the Randolph county Circuit Court, and the above are their depositions, correctly written down by me, on the hearing of said cause, on the 23d day of April, 1863.

"JOHN MICHAU, *Master in Chancery.*"
Marked, " Filed April 23d, 1863."

The testimony of the witnesses in the cause is omitted, as no question of law is involved in its consideration. But objection was made by the defendants to the introduction of the following certified statement of the allowance of claims in favor of the complainant against the estate of George H. Mason, deceased:

" STATE OF ILLINOIS, ⎰
RANDOLPH COUNTY. ⎱

" I, Isaac H. Nelson, clerk of the County Court of said county of Randolph, do hereby certify that the following allowances and assignment of allowances were made to Jacob M. Bair against the estate of George H. Mason, deceased, as appears of record in my office, to wit:

| | | | |
|---|---|---|---:|
| 1845. Sept. 16. | Amount allowed to Bair,.......... | | $117 73 |
| Dec. 30. | Amount " " .......... | | 2 01 |
| 1846. July 11. | Amount " " (1st class),. | | 60 00 |
| 1845. Aug. 26. | Amount assigned on book of allowances by Mary W. Mason out of widow's allowance,............. | | 82 11 |
| | Amount assigned by same out of said allowance, without date,........ | | 50 00 |
| | | | $311 85 |
| Out of the above allowance the books show that the sum of $7.50 was paid, ...................... | | | 7 50 |
| | | | $304 35 |

Mason et al. *v.* Bair.

" In witness whereof, I have set my hand and affixed the official seal, at Chester, this 17th day of September, 1863.

[SEAL.]　　　　" ISAAC H. NELSON, *Co. Clerk.*"

The ground of objection insisted upon by the defendants was, that the certificate was insufficient to prove indebtedness of Mason's estate to the complainant, and that it was irrelevant to the issues joined in the cause. The purpose of the complainant was thereby to show an indebtedness of the estate to him, to go in discharge of any balance that might remain unpaid of the original purchase price he was to pay for the land. The court overruled the defendants' objection, and received the certificate in evidence.

The record of the September Term, 1863, recites that the defendants, by Thomas G. Allen, their solicitor, moved the court to correct the minutes of the court made at the last term, allowing the bill to be amended, which motion was by the court overruled, and the defendants excepted. Thereupon the defendants moved to strike out of the complainant's bill the " interlineations made as amendments," under the order of the court at the last term, which motion was also denied, but the court ordered the complainant to exhibit on a separate paper, attached to the bill, in what the amendments to the bill consist, under· oath.

The defendants further moved the court to strike from the files the depositions of the complainant, referring to the testimony heard in open court at the April Term, 1863, and taken down in writing by the master. The following reasons were assigned in support of this motion:

1. Because said depositions were taken after this cause had been set for a hearing and submitted for decision, on issue joined by the answer and replication, without proper notice first given, and without the consent of the defendants.

2. It does not appear on the face of the depositions, or in the records of the court, that said witnesses were legally sworn to testify in this cause, or that the master in chancery was properly authorized to write down the depositions of said witnesses

3. The interrogatories, if any were put to said witnesses, do not appear with or on the face of said depositions; nor does it appear with said depositions that interrogatories were waived by the defendants.

4. And because said depositions are informal and insufficient, and irrelevant to the issues formed and made in the case.

But the court overruled the motion, and the defendants excepted.

The court below found the facts, as alleged in the bill, to be true, and decreed that the defendants, as the heirs-at-law of George H. Mason, deceased, convey the premises to the complainant, and that the injunction granted against further proceedings in the action of ejectment instituted by the heirs for the recovery of a part of the land, be made perpetual. Thereupon the defendants took this appeal, and now insist there was error in the order of the Circuit Court in ruling the defendants to answer the bill, before a final decision had been rendered on the demurrer.

2. In the order directing the testimony to be retaken, without notice to the guardian *ad litem,* after the cause was at issue, and submitted for decision.

3. In the order allowing the complainant to amend his bill, generally, after replication filed, and after the cause had been once submitted on the evidence, which had been taken and heard.

4. In the order overruling the defendant's motion to correct the bill, by striking out the interlined words and restoring the words erased.

5. In the order overruling the motion to exclude and strike from the files what purports to be the depositions of Joseph B. Holmes, George Golding and Jacob M. Bair, Jr.

6. In the order overruling the exceptions to the paper attached to the bill, entitled, "amendments as allowed at the April Term, 1863."

7. In the order overruling the objection, made by the defendants to the introduction and admission, as evidence, of the certificate of the clerk of the County Court.

8. And error in the final decree of the Circuit Court in directing the injunction to be made perpetual, a conveyance of the land described in the decree, and that the defendants pay costs, when a decree should have been made, dissolving the injunction with a dismissal of the bill, at the cost of the complainant.

Mr. THOMAS G. ALLEN, for the appellants.

Messrs. H. K. S. O'MELVENY and W. H. UNDERWOOD, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The first assignment of error on this record questions the correctness of the order requiring the defendants to answer the bill. A demurrer had been filed to the bill, and sustained to so much of it as made R. C. and Mary Petitt defendants, and the bill was dismissed as to them. By the same order, the other defendants were required to answer by the first day of the next succeeding July. The specific grounds of demurrer were, a want of equity apparent on the face of the bill; that it was multifarious, and that the Petitts were improper parties. The order dismissing the bill as to them, and requiring the other defendants to answer the bill, fails, in terms, to overrule the demurrer on the first two grounds specified, or to sustain it to the bill. Sustaining the demurrer as to one of the grounds, and requiring an answer to that portion of the bill to which the demurrer had been filed, manifestly overruled it by implication. No other inference can be indulged. We are, therefore, of the opinion that the demurrer was disposed of, when the order for an answer was made, and this error is not well assigned.

As to the second assignment of errors, no notice was required to take evidence in open court on the hearing. The parties had been brought into court by service of process. They were bound at their peril to be present when the evidence was heard as much as when any other step was taken in the cause.

It was their duty to be in court until a final decree was entered. The hearing of oral testimony has no analogy to taking depositions, and the law regulating them has no application. It is true that the evidence thus heard must be preserved in the record, but that may be done by the master reducing it to writing, as it was done in this case, or by any one else, or it may be embodied in the decree.

It is objected, that when the evidence was first taken, it should have been reduced to writing, and preserved in the record, and failing to do so is error. This, no doubt, would be a convenient practice, but there is no statutory requirement rendering such a practice necessary. Nor has this court announced such a rule. It is only necessary that such evidence appear in the record, and the court below must be left in the exercise of its discretion as to the time when, and the mode in which, it is placed in the record, so it shall be by the time the decree is rendered and filed. And if from accident the evidence thus taken should be lost or forgotten, before the decree was rendered or filed, it would be the manifest duty of the court, on application of the party, or, if a decision had not been made, on his own motion, to have the evidence retaken, that it might be understood by the court and preserved in the record. No possible reason is perceived why the court, when it had forgotten the evidence, and when it had not been reduced to writing and preserved in the record, should not be permitted to have the witnesses recalled and the evidence reheard. A different practice could only produce delay, increase expense and answer no beneficial end. There is no force in this objection.

It is again urged, that the court erred in allowing the bill to be amended after the replication was filed and the cause had been submitted on the evidence. Such amendments are allowed in furtherance of justice. They are within the discretion of the chancellor trying the cause, and unless it appears, that such an amendment has worked injustice or great hardship to the defendant, the exercise of the discretion will not be controlled. *Jefferson County* v. *Furguson*, 13 Ill. 33. Neither occurred in

this case, as at the time the leave was given to amend, the cause was continued until the next term, giving the defendants ample time to meet the amendments by proof if he had it. There is no weight in this objection. The fourth assignment of errors questions the correctness of the decision of the court, in overruling the motion to strike out the interlineations in the bill, alleged to have been made as amendments. There is no evidence in the record from which it can be inferred, that they were made after the bill was filed. For aught that appears they may have been a part of the bill as originally drafted. We can indulge no presumption that they were subsequently made. On the contrary, we must presume that the court below had evidence that they were a part of the original bill, or, at least, that there was no evidence that they constituted the amendments. There is nothing in this objection.

The fifth error is not well assigned. The evidence was not in depositions, but simply evidence taken in open court, and reduced to writing by the master. The objection taken could only apply to depositions. No objection appeared to the manner in which it was done in this case. It in all respects appears to have been regularly and properly preserved.

What has already been said in reference to the third assignment of error applies to the sixth, and renders its discussion unnecessary. They both depend upon the same principles, and the same reasoning applies equally to each.

The seventh assignment of errors questions the correctness of the action of the court in receiving the certificate of the clerk of the County Court, as evidence of the indebtedness of Mason's estate to defendant in error, and because it is alleged that it was not pertinent. The law has provided that persons having claims against the estates of deceased persons, shall, within two years after letters are granted, present the same for allowance, or be barred of their recovery, unless from subsequently discovered assets. Where claims are thus presented and allowed against the estate, the allowance is conclusive upon the executor or administrator, and has the force and effect of a judgment

until it is reversed. *Propst* v. *Meadows*, 13 Ill. 157. The estate, when these claims were allowed, became liable to pay them out of the assets of the estate in due course of administration.

But, as this is a proceeding against Mason's heirs to divest them of title descended to them from their father, and as they were not formally parties to the proceeding in the County Court allowing these claims, it may become material to determine whether they were bound by the allowance. The 95th section of the statute of wills, manifestly contemplates that the heirs are parties or may become parties to such proceedings. It provides that when a claim is presented against the estate for allowance, if the administrator, widow, guardian, heirs, or others interested in the estate, shall not object, the claimant shall be permitted to swear to his claim. This section gives the heirs the right to be present and contest the justice of the claim. Having this right, the adjudication of the court in allowing the claims, must be held *prima facie* binding upon the heirs, although they may have neglected to avail themselves of the right to contest its allowance. *Stone* v. *Wood*, 16 Ill. 177; *Hopkins* v. *McCann*, 19 id. 113. There was no evidence offered to show that these claims were unjust, and being conclusive against the personal estate of deceased, and *prima facie* binding upon the real estate as against the heirs, they were evidence until rebutted.

Then was this evidence material to the issue in this case? We think it was. The evidence in the case shows that defendant in error purchased the land in controversy for four hundred and fifty dollars, to be paid by satisfying and discharging that amount of Mason's indebtedness. It also appears that independent of these allowances he had paid debts owing by Mason, the sum of three hundred and eighty-eight dollars, and something over which the witnesses were unable to fix. To discharge the balance he had a right, after Mason's death, to pay other claims against the estate, or he might discharge the balance out of claims against the estate, as that would be indebtedness, whether to himself or to other persons. This, then, in connec-

tion with the other evidence, was pertinent to show that defendant in error had paid the full amount of the purchase-money.

We now come to the main question in the case. Does the evidence sustain the decree? It is clearly proved that defendant in error purchased the land, as claimed in the bill, of Mason before his death. It also appears that he was to pay four hundred and fifty dollars of Mason's debts as the consideration; that he went into possession under the purchase and occupied the premises about nineteen or twenty years. That he paid on the purchase debts of Mason to the amount of $388, besides some others the amount of which witnesses could not remember. Also that he had allowed in his favor against the estate a claim of $179.74, of which $172.74 remained unpaid. He also purchased of the widow, of her special allowance against the estate, the sum of $132.11, making in all due from the estate the sum of $304.35, besides interest. There was no evidence that any portion of the payments on the purchase of the land was included in these allowances. In fact that purchased of the widow could not have embraced them. One of the items is allowed in the first class which under no circumstances could have been the debts incurred by Mason and to be paid by defendant in error.

We think the evidence clearly shows that the purchase-money was paid; that possession was taken and held under the purchase; and that lasting and valuable improvements were made by him on the premises. Such facts have always been held to take a case out of the statute of frauds. This, then, entitled him to a conveyance, unless he has done some act by which he has estopped himself from claiming the benefits of his purchase, or by which he has rescinded the contract. His effort to acquire the title to this land at the administrator's sale could not have that effect. He was by that means attempting to procure the same title for which he had contracted with Mason in his lifetime. Had that sale been valid, he would have thus acquired the title by that sale, instead of having to resort to a bill for a specific performance of the agreement. But from inadvertence,

or from some other cause, a misdescription occurred in the num-. bers of the land, by which, to one forty acres of this tract, no title passed. The proof shows that defendant in error agreed to, and did, give the full value of the land when he purchased.

Nor can the fact, that a mistake was made in the description of the land in the bill as it was originally filed, be held to estop him from amending the bill so as to claim a conveyance of the premises really bought. As amended, the bill only truly sets out the agreement as it was made, and, as it was proved by the evidence, by it no injury was done to plaintiffs in error. By it they were not misled to any injurious act, nor did it deprive them of any just and equitable right. It was only in advancement of justice. The principle upon which estoppels *in pais* rest, is to prevent wrong and to advance justice. If this were held to be an estoppel, it would not effect such an object, but would only prevent the attainment of justice, and operate to defeat the contract of the parties.

Upon the whole case, it appears that in equity defendant in error has a right to have a specific performance of the agreement. The court below, therefore, correctly made the injunction perpetual, and decreed a conveyance of the legal title to defendant in error. The decree is therefore affirmed.

*Decree affirmed.*